Case 4:22-cv-03570   Document 20   Filed on 08/04/23 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
August 04, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRUCE CARTER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-3570 |
| | § | |
| CHEVRON U.S.A. INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER REMANDING CASE

Before the Court is a motion to remand filed by the plaintiff, Bruce Carter ("Carter"). (Dkt. 12). After careful consideration of the pleadings, the entire record, and the applicable law, the Court **GRANTS** the motion to the extent that it seeks a remand to state court but **DENIES** the motion to the extent that it seeks an award of attorney's fees and costs. This case is **REMANDED** to the 215th Judicial District Court of Harris County, Texas.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Carter, a longtime Chevron employee,[2] alleges that he suffered a severe knee injury when he stepped in a hole in a "dark and poorly illuminated parking lot" while preparing to board a helicopter in Nigeria to be taken offshore to the floating production storage and offloading vessel ("FPSO") on which he was a crew member. (Dkt. 1-3 at pp. 3–4). Carter

---

[1] The state-court cause number is 2021-24846.
[2] The parties vigorously contest the issue of exactly which Chevron entity employed Carter when he hurt his knee, but everyone agrees that he worked for some Chevron entity. (Dkt. 15 at p. 29; Dkt. 16 at p. 13). The precise identity of Carter's employer is not relevant to the Court's analysis of Carter's motion to remand.

claims that the parking lot was lit in a manner that was "wholly inadequate" given the "poor state of the asphalt" and that he stepped in the hole when he attempted to retrieve his luggage from the back of the truck that had taken him from his hotel to the heliport. (Dkt. 1-3 at pp. 4–5).

Carter retained David Bickham ("Bickham") to represent him. (Dkt. 12-1 at p. 15). On April 26, 2021, Carter filed a lawsuit in Texas state court against Defendants Chevron U.S.A., Inc. and Chevron Global Downstream, LLC (collectively "Chevron") as well as numerous other entities that fell under the corporate umbrella of Bristow (collectively "Bristow"). (Dkt. 1-1). Bristow was the transportation company that Chevron hired to take Carter and his fellow crew members back and forth between the FPSO and the mainland, and one of the Bristow entities named in the lawsuit was, like Carter, a citizen of Texas. (Dkt. 1-1 at pp. 3–4, 10). Carter sued Chevron under the Jones Act and sued Bristow under a premises liability theory. (Dkt. 1-1 at pp. 11–12). Carter also pled a common law negligence cause of action against all of the defendants. (Dkt. 1-1 at p. 11).

According to an unsworn declaration submitted by Carter, Chevron told Bickham that it wanted to take Carter's deposition and then mediate the case.[3] (Dkt. 12-1 at p. 15). Bickham explained to Carter that, since the defendants appeared amenable to mediating after they took Carter's deposition, he had not yet taken any depositions of his own. (Dkt. 12-1 at p. 15). Carter sat for his deposition on March 4, 2022. (Dkt. 15-11 at p. 44).

---

[3] Chevron has not objected to Carter's testimony about what Bickham told him.

Unfortunately, Bickham suddenly and unexpectedly died at age 58 on March 28, 2022, three weeks after Carter's deposition. (Dkt. 12-1 at p. 15). Bickham was a solo practitioner and did not have co-counsel on Carter's case, so his death left Carter without a lawyer. (Dkt. 12-1 at pp. 15–16). Bickham's death also evidently (and understandably) threw his office into turmoil, and as a result Carter was not able to get his case file until May 26, 2022. (Dkt. 12-1 at p. 16).

Carter retained his current counsel on June 20, 2022. (Dkt. 12-1 at p. 16). Once he had new counsel, Carter attempted to reach an agreement on a new docket control order with Chevron and Bristow. Unable to reach such an agreement, Carter filed a motion requesting entry of a new docket control order on August 10, 2022. (Dkt. 12-1 at pp. 68–70). The state court signed Carter's proposed docket control order on September 6, 2022; the order set trial for May 1, 2023. (Dkt. 12-1 at pp. 74–75, 81–82).

On September 23, 2022, Carter amended his state-court pleading and voluntarily dismissed all claims against Bristow. (Dkt. 1-3). It is uncontested that Carter dismissed Bristow without financial consideration and without reaching any sort of settlement agreement with Bristow. (Dkt. 12 at p. 13; Dkt. 15 at p. 17). Carter's amended pleading focused on bringing claims under the Jones Act and general maritime law against Chevron. (Dkt. 1-3). Carter alleged that Chevron "owed [Carter] a non-delegable duty to provide him a safe means of ingress and egress to and from the" FPSO on which he worked and that Chevron's duty extended to "maintaining the helipad and areas around the helipad, which includes a loading and unloading area." (Dkt. 1-3 at p. 4).

On October 14, 2022, Chevron removed the case to this Court under the diversity jurisdiction statute, 28 U.S.C. § 1332. (Dkt. 1 at p. 3). Carter filed a timely motion to remand in which he argues that Chevron cannot rely on the diversity jurisdiction statute because the one-year removal bar found in 28 U.S.C. § 1446(c) applies. (Dkt. 12 at p. 22).

## LEGAL STANDARDS

A defendant may remove to federal court a state-court civil action over which the federal court would have original jurisdiction. 28 U.S.C. § 1441(a); *see Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). Because it implicates important federalism concerns, removal jurisdiction is strictly construed. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921–22 (5th Cir. 1997). Any doubts concerning removal must be resolved in favor of remand, *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000), and the federal court "must presume that a suit lies outside [its] limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The removing party bears the burden of establishing by a preponderance of the evidence that federal jurisdiction exists and that removal is proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

28 U.S.C. § 1332 ("Section 1332") gives federal courts original jurisdiction over civil actions in which: (1) all persons on one side of the controversy are citizens of different states than all persons on the other side; and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332; *see also McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). However, when removal is based on Section 1332, the case may not be removed "more than 1 year after commencement of the action,

unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

A defendant who attempts to remove a case that is subject to the one-year bar has the burden of proving that the plaintiff acted in bad faith to prevent removal based on diversity jurisdiction within one year after the case's commencement. *Boney v. Lowe's Home Centers LLC*, No. 3:19-CV-1211, 2019 WL 5579206, at *2 (N.D. Tex. Oct. 29, 2019); *see also Hoyt v. Lane Construction Corp.*, 927 F.3d 287, 292–93 (5th Cir. 2019) (explaining that bad faith is a fact finding by the district judge that is reviewed by the appellate courts for clear error). The bad-faith determination is a case-by-case inquiry that is based on the conduct of the parties. *Prescia v. Old Republic Insurance Co.*, No. 18-593, 2018 WL 7001775, at *3 n.27 (M.D. La. Dec. 6, 2018). Conduct rises to the level of bad faith when that conduct amounts to "manipulation of the removal statute" or a "transparent attempt to avoid federal jurisdiction." *Boney*, 2019 WL 5579206 at *2 (quotation marks omitted); *see also Rantz v. Shield Coat, Inc.*, No. 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017) (collecting cases) ("The Court will . . . focus its bad faith inquiry on whether plaintiffs' conduct illustrates manipulation of the removal statute so as to prevent Travelers from removing the case to federal court under § 1332."). "The determination of bad faith is left to the discretion of the district court, but 'the exception to the bar of removal after one year is limited in scope.'" *Bryson v. Wells Fargo Bank, N.A.*, No. 1:16-CV-28, 2016 WL 1305846, at *4 (E.D. Tex. Mar. 31, 2016) (quoting H.R. Rep. No. 112-10, at 15 (2011)). In the Fifth Circuit, courts typically find bad faith only when presented with "clearly egregious" facts. *TK Trailer Parts, LLC v. Long*, No. 4:20-CV-2864, 2020 WL

6747987, at *6 (S.D. Tex. Nov. 2, 2020), *adopted*, 2020 WL 6743738 (S.D. Tex. Nov. 17, 2020) ("TK's conduct as described by Johnson does not rise to the level of 'clearly egregious' facts that courts in this circuit consider indicative of bad faith.") (footnote omitted) (collecting cases). For instance, in one commonly cited case, "the plaintiff dismissed a suit once it was removed and then refiled a nearly identical suit with the addition of a non-diverse defendant." *Id.* (citing *Shriver v. Spiritcom, Inc.*, 167 F. Supp. 2d 962 (S.D. Tex. 2001)); *see also Hoyt*, 927 F.3d at 292–93 (holding that the district court's bad-faith finding was not clearly erroneous when the plaintiffs actively pursued their claims against the removing diverse defendant, "half-heartedly" pursued their claims against the non-diverse defendant, dismissed the non-diverse defendant "for free" two days after the one-year removal deadline expired, and did not clarify for the district court when the "alleged" settlement discussions with the non-diverse defendant took place); *Solaija Enterprises LLC v. Amguard Insurance Co.*, No. 4:19-CV-929, 2019 WL 2329832, at *2 (finding that the removing defendant had failed to establish bad faith because the case "[wa]s not a case where a plaintiff names a non-diverse resident defendant, never serves that defendant, and dismisses that defendant as soon as the one-year limitation in § 1446(c) expires").

## **ANALYSIS**

Chevron has not presented proof of clearly egregious facts showing that Carter engaged in conduct amounting to manipulation of the removal statute or a transparent attempt to avoid federal jurisdiction. Accordingly, Chevron has not carried its burden of establishing by a preponderance of the evidence that federal jurisdiction exists and that

removal was proper.

Chevron argues that Carter engaged in bad-faith forum manipulation by suing Bristow, whose presence destroyed diversity, and consequently preventing Chevron from removing this case within a year of its commencement. (Dkt. 15 at p. 8). Chevron builds its claim that Carter sued Bristow in bad faith on three allegations: (1) Carter "fail[ed] to pursue any written discovery or depositions" from Bristow; (2) Carter voluntarily dismissed Bristow "without receiving compensation[;]" and (3) Carter voluntarily dismissed Bristow "just two (2) weeks after the State Court granted him a new [docket control order] with the discovery dates he requested." (Dkt. 15 at pp. 16–20). Taken together, Chevron argues, these circumstances "prove that [Carter] knew [he] never had a claim against [Bristow]" and that "[Carter's] true motive for joining [Bristow] was to destroy the court's diversity jurisdiction." (Dkt. 15 at pp. 16–20).

The Court is unpersuaded. Chevron's argument runs aground on the crucial facts that distinguish this suit from all of the cases cited by both parties (as well as every case that the Court could find on its own): Bickham, who brought Bristow into the lawsuit, died 11 months after the case commenced; and Carter's current counsel, who dropped Bristow from the lawsuit, was retained two months after the one-year cutoff and had no affiliation with Bickham. Chevron insists that Bickham's death is irrelevant because "Carter is . . . accountable for the actions, omissions, and motivation of both his original and current counsel." (Dkt. 15 at p. 20). But Chevron's contention presumes that Carter's current counsel's actions can constitute proof of Bickham's bad faith; and on this record, they do not.

As Chevron notes, the record reflects that Bickham did not pursue discovery against Bristow—but the record also reflects that Bickham did not pursue discovery against Chevron. Carter testifies in his declaration that Bickham did not pursue discovery because he was expecting to mediate the case after Carter's deposition. (Dkt. 12-1 at p. 15). Bickham died only three weeks after Carter's deposition, and there is no evidence impugning the sincerity of Bickham's belief that mediation was imminent. By the same token, there is no evidence showing that Bickham ever intended to dismiss Bristow or that Bickham subjectively believed that Carter had no viable claims against Bristow. On this record, even if Carter's claims against Bristow had no chance of succeeding, their invalidity alone is not evidence of Bickham's bad faith. *See Rantz*, 2017 WL 3188415 at *6 & n.29 ("In some instances, improper joinder will have been done to prevent removal; in other instances, it will have resulted from a lack of due diligence by counsel. The former would support relief from § 1446(c)(1)'s one-year deadline, but the latter would not."). In the end, "there is no evidence that [Bickham] would have dismissed [Bristow] within one year of filing the lawsuit but for an intent to prevent [Chevron] from removing the case to federal court." *Solaija*, 2019 WL 2329832 at *2. Accordingly, Chevron has not met its burden of proving that Carter acted in bad faith to prevent removal based on diversity jurisdiction within one year after the case's commencement.

Chevron has not carried its burden of establishing by a preponderance of the evidence that federal jurisdiction exists and that removal was proper. Remand is

appropriate.[4]

## CONCLUSION

Carter's motion to remand (Dkt. 12) is **GRANTED** to the extent that it seeks a remand to state court but **DENIED** to the extent that it seeks an award of attorney's fees and costs. This case is **REMANDED** to the 215th Judicial District Court of Harris County, Texas.[5] The Clerk is directed to provide a copy of this order to the parties. The Clerk is further directed to send a certified copy of this order via certified mail, return receipt requested, to the District Clerk of Harris County, Texas and the Clerk of the 215th Judicial District Court of Harris County, Texas.

Any other pending motions are **DENIED as moot**.

SIGNED at Houston, Texas on August 4, 2023.

_George C. Hanks Jr._
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

---

[4] In its notice of removal, Chevron also contends that the Jones Act does not prohibit removal because Carter's Jones Act claims were fraudulently pled, which Carter denies. (Dkt. 1 at p. 4; Dkt. 12 at pp. 27–28). Because Chevron has failed to carry its burden of proving that Carter acted in bad faith to prevent removal based on diversity jurisdiction within one year after the case's commencement, the validity of Carter's Jones Act claims is irrelevant to the Court's consideration of this motion. *See Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 348 (5th Cir. 1999) ("The absence of a valid Jones Act claim, of course, does not automatically vest jurisdiction in the district court. We must determine, therefore, whether Hufnagel's suit was removable."); *see also Rushing v. Pride International, Inc.*, No. 4:11-CV-294, 2011 WL 3021043, at *4 (S.D. Tex. July 22, 2011) ("In addition to asserting fraudulent joinder of a Jones Act claim, Defendants would have had to supply an independent basis for federal jurisdiction.").

[5] The state-court cause number is 2021-24846.